ELIZABETH ARDEN, INC. *v.* UNITED STATES [1]

[1] C. D. 25.

## United States Customs Court, Third Division

(Decided August 1, 1938)

*Mary Rehan* for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel G. McGrath*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., not participating

CLINE, Judge: In this suit against the United States the plaintiff claims that the collector of customs at the port of New York assessed additional duty illegally at the rate of 10 per centum ad valorem under section 304 (b) of the Tariff Act of 1930 on the ground that the merchandise was not legally marked when imported.

The merchandise in this case, which is invoiced as "gland cream", was imported from Vienna, Austria. It appears from the testimony that the cream was imported in metal drums and the drums were covered by wooden crates. The cream was not capable of being marked and the metal drums contained no marks to indicate the country of origin of the cream when imported. The wooden crates were marked with the legend "Made in Austria." It is obvious that the metal drums were the immediate containers of the gland cream.

Two employes of the importing firm were called as witnesses by the plaintiff. One of them was a receiving clerk and the other a chemist. The receiving clerk testified that he received the merchandise at the plant of the importing firm and that he took the drum containing the cream from the wooden crate and delivered it to the chemist. The chemist testified that he weighed the cream, transferred it to a mixing machine and added perfume, which was thoroughly mixed with the cream in the machine, then transferred the cream containing the perfume to an ointment mill where it was milled. After this treatment the cream was put up in jars and sold in that condition.

Counsel for the plaintiff argues that since the importer used the gland cream for manufacturing purposes, it was consumed in manufacture and not sold to the public in the condition as imported and consequently there was no reason why the drums should be required to be marked with the name of the country of origin as the crates were the only parts of the shipment which were exposed to the eyes of the public and therefore the marking on the crates was a sufficient compliance with the law, citing *Kraft-Phenix Cheese Corp.* v. *United States*, 22 C. C. P. A. 111, T. D. 47103. We are of opinion that there is nothing stated in the *Kraft-Phenix Cheese Corp.* case, *supra*, tending

to relieve an importer from marking the immediate containers of imported merchandise even though the merchandise is imported by a manufacturer who processes the goods. That decision was considered in the case of *Hensel, Bruckman & Lorbacher, Inc.* v. *United States*, Abstract 30445, wherein the immediate containers of merchandise were not marked at the time of importation and—

It was held that there is nothing in the decisions in *Kraft* v. *United States* (22 C. C. P. A. 111, T. D. 47103) and *Givaudan* v. *United States* (id. 115, T. D. 47104) from which it might be inferred that where neither the imported article nor its *immediate* container is legally marked an importer may be relieved from the payment of additional duty merely because the outside containers are properly marked. [Italics quoted.]

In *Givaudan Delawanna, Inc.* v. *United States*, 22 C. C. P. A. 115, T. D. 47104, the court, in construing the provisions of section 304, said:

Our conclusion is that, while all containers and packages must be marked, under this section, an additional duty is to be levied only when the article or the *immediate* container is not marked. If either be marked, the additional duty does not apply. [Italics quoted.]

The situation in the present case is similar to that in the case of *I. B. Kleinert Rubber Co.* v. *United States*, Abstract 32564, wherein metal forms for bathing caps and bathing shoes, wrapped in paper and packed in wooden cases, were before the court for consideration as to legal marking. The metal forms and the wrapping paper were not marked so as to indicate the country of origin of the merchandise but the wooden cases were properly marked. The court said:

The official notations on the summary of examination and appraisement sheet show that the appraiser reported that these articles were to be used in connection with the importer's business and not intended for sale, and that the importer was advised the merchandise was not required to be marked, after the merchandise had been submitted to the law division of the customs bureau. Since the 10 percent additional duty was assessed in liquidation of the entry it appears that the Treasury Department did not exercise the power of exemption provided in section 304 (a) of the act of 1930. It was held that the paper wrappers of these articles were the immediate containers, and as neither the articles nor the immediate containers were legally marked the additional duty was properly assessed.

Counsel for the plaintiff claims in the alternative that, by virtue of the customs regulations, the merchandise is exempt from marking because it is substantially changed in the importer's manufacturing plant and that the immediate containers are also exempt from the marking requirement. The portion of section 304 (a) which gives the Secretary of the Treasury the power to exempt articles from marking reads as follows:

SEC. 304 (a) * * * The Secretary of the Treasury may, by regulations prescribed hereunder, except any article from the requirement of marking, stamping, branding, or labeling if he is satisfied that such article is incapable of being

marked, stamped, branded, or labeled or can not be marked, stamped, branded, or labeled without injury, or except at an expense economically prohibitive of the importation, or that the marking, stamping, branding, or labeling of the immediate container of such article will reasonably indicate the country of origin of such article.

Where a statute authorizes the Secretary of the Treasury to make regulations for the enforcement of the provisions of the law, regulations made in compliance with the provision, if reasonable, are entitled to and have the force of law. Citing *Gump* v. *United States*, 3 Ct. Cust. Appls. 137, T. D. 32384; *Penick & Ford* v. *United States*, 12 Ct. Cust. Appls. 432, T. D. 40611; *Gallagher & Ascher* v. *United States*, 14 Ct. Cust. Appls. 38, T. D. 41548.

Article 513 (*a*) of the Customs Regulations of 1931, as first promulgated, reads as follows:

Art. 513. *Exceptions to marking requirements.*—(*a*) The following articles and their containers and the packages in which imported are hereby excepted from the marking requirements of section 304 * * *:
(5) Crude substances or materials and their containers.

In the case of *Givaudan Delawanna, Inc.* v. *United States, supra,* the appellate court held that section 304 (a) did not give the Secretary of the Treasury the power to except any containers from marking. After the promulgation of that decision the regulations were amended in T. D. 47558 by deleting the words "and their containers" from article 513 (*a*) (5), and, in T. D. 48489, the regulations were amended further by deleting paragraph (5) and substituting in lieu thereof the following:

(*b*) The following articles are hereby excepted from the marking requirements of section 304 of the tariff act (the immediate containers and packages to be marked):
(1) Crude substances or materials.
(2) Merchandise which is to be substantially changed in the importer's plant or for his account by further processing or manufacture which would obliterate or destroy such marking.

This latter amendment was approved on August 20, 1936, and was in force at the time of importation of the merchandise here involved. It is manifest that the plaintiff can claim no exemption from marking of the immediate containers of the merchandise in this case for the exemption is limited to the articles and not to the "immediate containers or the packages."

Counsel for the plaintiff calls attention to the exemption of the containers from marking as expressed in article 513 (*a*), which was not amended, and argues that the containers should be exempt from marking under that regulation. An examination of this regulation indicates that it does not govern or control article 513 (*b*) in the amended regulations. Therefore, even though the merchandise was

substantially changed in the importer's plant and comes within article 513 (*b*) (2) and is thus excepted from the marking requirement even if it was capable of being marked, the immediate containers thereof must be marked in order to comply with the law.

Under the authorities above cited it is well settled that, where an article is not capable of being marked or has been excepted from the marking requirements by regulations of the Secretary of the Treasury, the immediate container thereof is required to be legally marked, and in the absence of legal marking of the immediate container, the additional duty under section 304 (b) of the Tariff Act of 1930 should be imposed. The instant shipment comes exactly within the rule. The gland cream was not capable of being marked and was also excepted from marking by the regulations, but the immediate containers thereof were not marked. Under such circumstances section 304 (b) requires that the collector shall assess the additional duty of 10 per centum ad valorem on the merchandise. The protest is accordingly overruled. Judgment will be entered in favor of the defendant.